# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# 1:18-cv-00492

| | |
|---|---|
| ARLENE GARCIA, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) **COMPLAINT**<br>) **Jury Trial Demanded**<br>) |
| MULTITECH MECHANICAL SUPPORT, INC., and LUMINARIAS, LLC | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

**NOW COMES** the Plaintiff, Arlene Garcia, and alleges as follows:

## PRELIMINARY STATEMENT

This action arises from the wrongful acts of Multitech Mechanical Support, Inc., and Luminarias, LLC (collectively, "Defendants" or "Multitech/Luminarias"), including the retaliatory termination of Plaintiff's employment and other acts of sexual harassment and discrimination. Plaintiff asserts claims against Defendants under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and under state common law for wrongful discharge in violation of North Carolina public policy.

## PARTIES

1. Plaintiff Arlene Garcia is, and was at all times relevant to this Complaint, a resident of Cameron, North Carolina, in Moore County.

2. Defendant Multitech Mechanical Support, Inc. ("Multitech") is a North Carolina

Corporation, headquartered in Sanford, North Carolina, in Lee County. Multitech is a temporary staffing agency that recruits and places individuals in employment positions for its customers.

3. Defendant Luminarias, LLC ("Luminarias") is a North Carolina Corporation, headquartered in Sanford, North Carolina in Lee County. Luminarias is an event planning company that provides an event venue and logistical services for special occasions including weddings, corporate events, and social gatherings.

4. Defendants Multitech and Lumiarias jointly employ Ms. Garcia.

5. Upon information and belief, each of the Defendant Corporations is owned by, managed by, and/or operated for the benefit of, Joel Vasquez and Rafaela Pantaleon, individually or between them. Mr. Vasquez and Mrs. Pantaleon are married to one another.

## JURISDICTION AND VENUE

6. This Court has personal jurisdiction over Defendants because Defendants are organized under the laws of North Carolina, have their principal places of business within the Middle District of North Carolina, and because the acts and omissions at issue have occurred in the Middle District of North Carolina.

7. This Court has federal question subject matter jurisdiction under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and 28 U.S.C. § 1331.

8. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b)(2) because Defendants reside in the Middle District of North Carolina, and acts and omissions

giving rise to this action occurred in the Middle District of North Carolina.

## GENERAL ALLEGATIONS

9. Ms. Garcia was jointly employed by Multitech/Luminarias beginning on or about March 8, 2017, and worked for Defendants until her termination on May 2, 2017.

10. Ms. Garcia was hired as an Event Coordinator, and worked this position throughout her joint employment with Defendants.

11. During her employment with Multitech/Luminarias, Ms. Garcia reported to Mrs. Pantaleon, her supervisor, and was additionally supervised by Mr. Vasquez.

12. During her employment with Multitech/Luminarias, Ms. Garcia was subjected to sexual harassment by her co-worker, Raul Candelario. On numerous occasions throughout Ms. Garcia's employment, Mr. Candelario made sexual advances towards Ms. Garcia that she rejected.

13. Mr. Candelario's unwanted advances included inviting Ms. Garcia into a private room so that he could give her a massage and provocatively asking her to join him in his hotel room while traveling for work in South Carolina. Mr. Candelario also texted Ms. Garcia to determine if her male coworker, Luis, was present in the Luminarias office, or if she was alone. When Luis was not present, Mr. Candelario would stand uncomfortably close to Ms. Garcia while she sat at her desk and worked.

14. Ms. Garcia was especially concerned by the behavior of Mr. Candelaria due to his previous sexual misconduct, including sending an unsolicited picture of his penis to Ms. Garcia's sister.

15. Because Mr. Candelario attends the same church as Ms. Garcia and her family, Ms. Garcia sought the counsel of her pastor in Sanford, North Carolina. During this meeting, Ms. Garcia learned from her pastor that Mr. Candelario was under investigation for sexually harassing other women and sending pictures of his penis to underage girls within the congregation of their church.

16. Concerned with the pattern of Mr. Candelario's sexual misconduct, soon after her meeting with the pastor, Ms. Garcia met with her supervisor, Mrs. Pantaleon. In her meeting with Mrs. Pantaleon, Ms. Garcia reported the sexual harassment she was experiencing from Mr. Candelario.

17. Mrs. Pantaleon was upset and appeared angry at Ms. Garcia's complaint. Throughout the meeting, Mrs. Pantaleon reiterated that, "Raul is one of our best employees" and ordered Ms. Garcia not to mention Mr. Candelario's behavior to any other employees. Mrs. Pantaleon further stated that she "didn't want drama at [her] business."

18. Mrs. Pantaleon then described to Ms. Garcia an earlier event in which the mother of one of Defendants' employees who had also been harassed by Mr. Candelario complained to Mrs. Pantaleon about the harassment and threatened to call the police. Mrs. Pantaleon told Ms. Garcia that, in response to this mother's threat to call the police, Mrs. Pantaleon threatened to call the police on the mother instead.

19. After the meeting, Ms. Garcia was concerned that Mrs. Pantaleon was upset with her for bringing her concerns to Mrs. Pantaleon's attention.

20. On the following day, Mrs. Pantaleon, Mr. Vasquez, and the owners' daughter, Jael Vasquez, confronted Ms. Garcia and presented her with a document that alleged that Ms. Garcia's complaints of harassment had been addressed.

21. Mr. Vasquez suggested that Mr. Candelario would be required to stay out of the Luminarias office and to have no contact with Ms. Garcia going forward. Mr. Vasquez and Ms. Pantaleon demanded that Ms. Garcia sign the document. Ms. Garcia did so.

22. Ms. Garcia worried that she had run afoul of her supervisors for expressing her concerns, due to retaliatory comments Mr. Vasquez made afterward. For example, approximately one week after her complaint, Mr. Vasquez approached Ms. Garcia to scold her for reporting Mr. Candelario's harassment. Mr. Vasquez stated that "[a]s a woman, you have the power to put a stop to anything you want," and then complained that Ms. Garcia should have considered Mr. Candelario's family before complaining about his conduct.

23. Several weeks later, on April 29, 2017, Ms. Garcia worked at the Wedding Expo, which was an event that she had helped organize as part of her job duties with Defendants. Upon arriving at the Expo, Ms. Garcia was surprised to find that Mr. Candelario was working there. Ms. Garcia felt upset that there had been no prior communication from her supervisors that Mr. Candelario would be working there, nor any efforts made to keep him separated from her. Nonetheless, Ms. Garcia worked through the entirety of her shift.

24. However, on May 1, 2017, Mr. Vasquez suddenly informed Ms. Garcia that she no longer was employed by Luminarias due to poor work performance, and that she was being offered a severance check bearing Multitech's name.

25. Mr. Vasquez alleged, in the same conversation, that Ms. Garcia "[was] not cut out for the job." When Ms. Garcia inquired, "Is this something personal?" Mr. Vasquez responded, "In my business I have never had problems between my employees," referring to her complaints about Mr. Candelario. Mr. Vasquez further expressed his disapproval of Ms. Garcia complaints about Mr. Candelario by calling her "weak" and saying she "need[s] more character."

26. When Ms. Garcia later spoke with Mrs. Pantaleon regarding her termination, Mrs. Pantaleon now stated that Ms. Garcia had been terminated due to tardiness. Mrs. Pantaleon claimed that other employees arrived for work at 8:45 a.m., but that Ms. Garcia arrived at 9:00 a.m.

27. Prior to her termination, Ms. Garcia had not heard any previous complaints or any suggestion of poor job performance or tardiness. Ms. Garcia never received a warning, complaint, or anything that indicated her performance was anything less than satisfactory.

28. During her employment with Defendants, Ms. Garcia took great pride in her work, and did not receive reprimands or formal negative feedback prior to her termination.

29. Ms. Garcia's termination followed soon after she brought Mr. Candelario's sexually harassing conduct to light. Defendants terminated Ms. Garcia on the basis of her sex

and in retaliation for reporting Mr. Candelario's harassment.

30. Based on the termination, on or about September 21, 2017, Ms. Garcia filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of her sex and retaliation against her complaints of sexual harassment.

31. On March 27, 2018, the EEOC sent Ms. Garcia a Notice of Right to Sue ("NRTS"), enabling Ms. Garcia to bring the present action.

32. As a result of the discrimination and harassment to which Ms. Garcia was subjected, and as a result of her retaliatory termination, Ms. Garcia has suffered and continues to suffer severe emotional distress and significant economic damages.

## FIRST CLAIM FOR RELIEF
### Retaliation under 42 U.S.C. § 2000e-3

33. Plaintiff hereby incorporates the foregoing paragraphs as if fully set out herein.

34. Plaintiff engaged in protected activity by complaining to Defendants about sexual harassment.

35. Plaintiff's employment was terminated within several weeks after making her complaint to Defendants.

36. The adverse employment action taken by Defendants was because of, and in response to, Plaintiff's protected activity.

37. The actions of Defendants as set forth herein constitute retaliation against Plaintiff for the assertion of her right to be free from sexual harassment and sex

discrimination. Such retaliation is in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-3(a).

38. Defendants engaged in retaliation against Plaintiff with either malice or with reckless indifference to the federally protected rights of Plaintiff to be free from sex discrimination in the workplace, as set forth in 42 U.S.C. §1981a(b)(1).

39. As a result of these actions, Plaintiff has been damaged in an amount to be determined at trial, plus punitive damages, in an amount to be determined by the finder of fact, as well as attorneys' fees.

## SECOND CLAIM FOR RELIEF
### Hostile Work Environment

40. Plaintiff hereby incorporates the foregoing paragraphs as if fully set out herein.

41. The actions of Defendants, as set forth herein, constitute harassment and discrimination against Plaintiff on the basis of her sex.

42. The complained-of harassment was sufficiently pervasive or severe to alter the terms, conditions, and privileges of her employment.

43. The foregoing harassment is attributable to and was caused by the acts of the Defendants.

44. Defendants have engaged in discriminatory practices with malice or reckless indifference to Plaintiff's federally protected rights, thereby entitling her to punitive damages pursuant to 42 U.S.C. § 1981a.

## THRID CLAIM FOR RELIEF
**Wrongful Discharge in Violation of North Carolina Public Policy**

45. Plaintiff hereby incorporates the foregoing paragraphs as if fully set out herein.

46. Plaintiff was an employee of Defendants.

47. It is the public policy of the State of North Carolina, as stated in N.C. Gen. Stat. §143-422.2, that employees shall be free from sex discrimination in their employment.

48. Defendants terminated Ms. Garcia's employment because of her sex.

49. Ms. Garcia was sexually harassed, discriminatorily treated, and discriminatorily discharged because of her gender. Said wrongful discharge was in violation of North Carolina public policy.

50. As a result of these actions, Ms. Garcia has been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays the Court for judgment as follows:

a. That all matters so triable be tried before a jury;

b. That Defendant shall compensate Plaintiff for her compensatory damages in an amount to be determined by the finder of fact,

c. For punitive damages in an amount calculated to punish Defendants and deter similar future conduct;

d. For a judgment finding Defendants' employment practices described herein to be unlawful;

e. Pre-judgment and post-judgment interest as provided by law;

f. The costs of this action;

g. Plaintiff's attorneys' fees; and,

h. Such other and further relief as the Court may deem just and proper.

This, the 11th day of June, 2018.

**Kornbluth Ginsberg Law Group, P.A.**
*Attorneys for Plaintiff*

/s/ Michael Kornbluth
Michael Kornbluth
N.C. Bar No. 27928
Mkornbluth@kglawnc.com
Andrew J. Henson
N.C. Bar No. 49266
Ahenson@kglawnc.com
3100 Tower Boulevard, Suite 800
Durham, North Carolina 27707
Telephone: (919) 401-4100
Facsimile: (919) 401-4104